(C. D. 743)

TECHNICOLOR MOTION PICTURE CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 6, 1943)

*Loeb & Loeb* (*Herman F. Selvin* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly*, special attorney), for the defendant.

OLIVER, Presiding Judge: The merchandise at bar consists of certain motion-picture films which had been exposed and developed. These films were exported by Technicolor, Ltd., from England, and are described on the invoice. as one (1) complete set matrices (Y. C. M.). The merchandise was assessed for duty at 3 cents per linear foot under the provisions of paragraph 1551 of the Tariff Act of 1930 as negatives of motion-picture films which had been exposed and developed. It is claimed properly dutiable at 1 cent per linear foot under the provisions of the same paragraph as positive motion-picture film. The issue before the court is one of fact; namely, whether or not the imported films are negatives or positives.

The pertinent portions of paragraph 1551 are as follows:

PAR. 1551. * * * photographic-film negatives, imported in any form, for use in any way in connection with moving-picture exhibits, or for making or reproducing pictures for such exhibits * * * exposed and developed, 3 cents per linear foot; photographic-film positives, imported in any form, for use in any way in connection with moving-picture exhibits, including herein all moving, motion, motophotography, or cinematography film pictures, prints, positives, or duplicates of every kind and nature, and of whatever substance made, 1 cent per linear foot: * · * * .

Upon the trial two witnesses testified on behalf of the plaintiff, one being the vice president and assistant general manager of the plaintiff-corporation. The second witness was connected with the technical division of the Eastman Kodak Co. of Rochester, N. Y., which company manufactured the raw film stock from which the imported exposed and developed films were made. No testimony was introduced by the Government in support of the collector's classification.

It is not disputed that the imported merchandise in the form of exposed developed motion-picture film is made upon a special film stock manufactured only by the Eastman Kodak Co. who have been making this particular material since 1928. There is some testimony that a similar general type of merchandise had been manufactured and on the market since about 1920. There is in evidence a small sample of this stock (exhibit 1) which has the general appearance of. ordinary motion-picture film with perforated edges, except that it is red in color. Both witnesses agree that there are but two basic types of motion-picture film, negative and positive, and that the technical characteristics of the two films are widely different.

The label used by the Eastman Kodak Co. in marketing the raw film stock from which the merchandise at bar is made, is also before the court (illustrative exhibit 2). From it and from the testimony of the witnesses it appears without contradiction that this particular stock has always been known in the trade and bought and sold as

positive film. Both the witnesses for the plaintiff have unqualifiedly testified that the raw stock is known as positive film and, that the merchandise in the condition in which imported is exposed and developed positive motion-picture film. This testimony stands uncontradicted in the record.

It is not claimed by either party to this action that there is any precedent for this case as the direct question here presented has not heretofore been before the court.

It appears from the record in the case at bar that in the technicolor process a special camera is used and when the pictures are taken they are recorded simultaneously on three different films, none of which is the positive film stock heretofore referred to as exhibit 1. The films thus taken in the camera are developed into negatives as they are commonly and ordinarily understood in that the object photographed appears on the film in reverse; that is, white appears as black and black as white.

Just as three negatives are made simultaneously in the first instance in the technicolor camera, so there is printed from these so-called separation negatives a set of three so-called positive prints or matrices. These prints are made on the positive film stock similar to illustrative exhibit 2. The matrices, the imported films before the court, are passed through various color dye baths after importation in which process the films take up varying proportions of the dyes, depending on the density of the gelatin image on the film. After importation the three films or matrices are used to print the final projectable film which adopts the color from each of the three dye-treated matrix films. The manufacturing process pursued in creating the projectable commercial technicolor print was likened by the witness to lithography in printing.

For the purpose of illustrating the process and to aid the court in visualizing the subject matter of the oral testimony, plaintiff introduced in evidence a chart or series of sets of film showing the various operations through which this material passes in the process from the first state, which is the so-called separation negative, down to the complete composite final print (illustrative exhibit 3). By reference to this chart, it will be noted that the upper, or first line, shows the color separation negatives, which as heretofore stated, are not made on the positive stock (illustrative exhibit 2), but represent the film as exposed in the camera and are, as indicated, negatives. It is alleged by the plaintiff that this set of color separation negatives is the only set in the technicolor process that is negative, although there is testimony that in some cases where certain light effects are required, the technicolor process does use a further black-and-white negative, but this is in special instances only.

Upon the facts above set forth, plaintiff contends that the matrices

in the condition in which imported are positive films within the common meaning of that term. First, it is urged that they are produced on positive film stock, and second, the image on them is positive in that they have been printed from negatives and the objects appearing thereon are positive; that is, white as white and black as black. It is further contended that even if there is some doubt as to whether the merchandise is entirely positive or has characteristics of both positive and negative, such doubt should be resolved in favor of the importer.

The defendant contends that the matrices, even though showing a positive image and printed from negatives, are not, as imported, capable of screen projection. The defendant further alleges that the films in question are not the usual motion-picture positives which are ordinarily contact prints made from negatives. The Government also contends that the merchandise as imported is used for the purpose of making a commercially projectable film and that its use is similar to the use performed by a negative, and therefore, it does not fall within the ordinary meaning of the term positive as contained in the provisions of paragraph 1551 of the Tariff Act of 1930. Accordingly, the defendant contends that the merchandise as imported does not fall within the omnibus clause of paragraph 1551 covering:

* * * photographic-film positives * * * including herein all moving, motion, motophotography, or cinematography film pictures, prints, positives, or duplicates of every kind and nature, and of whatever substance made.

Finally, the defendant contends that the imported matrix film to come under this clause must be either a positive, a picture, a print, or a duplicate, and that it is none of these.

As there is no claim here of commercial designation and no claim that any meaning other than common meaning will control, we are primarily interested in the dictionary definition of positive and negative as applied in the art of photography. In Webster's New International Dictionary, 2nd Edition 1940, we find the following:

positive, adj. * * * 15. Photog. a. Having the rendition of light and shade as in the original subject; as, a positive image. b. Having properties required to produce a positive image; as a positive film.

positive, n. * * * e. Photog. A positive picture (see, Positive, adj., 15 a); also, a print from a negative, as on printing paper or film.

negative, adj. * * * 9. Photog. Having the lights and shades in approximately inverse order to those of the original subject.

negative, n. * * * 9. Photog. A negative image, usually on transparent material and used for printing the positive pictures.

Similar definitions are to be found in the Oxford English Dictionary and Funk & Wagnalls New Standard Dictionary. From these it is

obvious that the so-called color separation negatives shown on illustrative exhibit 3 are clearly negatives; that is, the object is shown in the reverse of the light and shadow as they appear on the object photographed. In like manner and following the definitions above referred to, the matrices in the condition in which imported come clearly within the definition of positives as they are the reverse of the negatives, and have been printed from the negatives.

The witnesses in the case at bar, whose qualifications in the particular field involved are unquestioned, and whose testimony is unchallenged, both testified that the imported matrices in the condition in which imported, are motion-picture positives and not negatives, and that they are printed on a special positive stock which is specially treated and prepared to produce a positive image.

The record and the exhibits in the case at bar establish that the merchandise herein is produced on positive film stock and that the image on the film as imported is positive. There is nothing in the act or in the legislative history to which our attention has been directed, nor have we been able to find anything elsewhere, to support the defendant's position that to be a positive film under paragraph 1551 of the Tariff Act of 1930 the film, at the time of importation, must be a contact print made from a negative ready to be used without further manipulation for projection upon a screen. In fact, the very language of paragraph 1551 reading "positives * * * of every kind and nature * * *" gives general support to the plaintiff's claim. [Italics ours.]

Upon the record here before us we hold that the imported matrices are photographic-film positives and properly dutiable at the rate of 1 cent per linear foot under paragraph 1551 of the Tariff Act of 1930 as claimed. To this extent the protest is sustained and in all other respects the protest is overruled.

Judgment will be rendered accordingly.